[No. E029822. Fourth Dist., Div. Two. Nov. 28, 2001.]

DONOVAN WALKER, Plaintiff and Appellant, v.
BILL JOHN KIOUSIS, Defendant and Respondent.

1434

**COUNSEL**

Law Offices of Thomas K. Hadley and Thomas K. Hadley for Plaintiff and Appellant.

Anthony M. Santana for California Association of Highway Patrolmen as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Holly H. McGregor, Law Offices of McGregor & Mosier, Holly H. McGregor and Robert A. Mosier for Defendant and Respondent.

Daniel P. Tokaji and Mark D. Rosenbaum for ACLU Foundation of Southern California as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**RICHLI, J.**—Civil Code section 47 provides generally that statements made in the course of an official proceeding are absolutely privileged. Those statements therefore cannot serve as a basis for civil liability. Civil Code section 47.5, however, creates an exception, allowing a peace officer to bring a defamation action against an individual who knowingly and maliciously files a false complaint about the officer with the officer's employing agency.

As have two federal district courts, we conclude Civil Code section 47.5 impermissibly regulates speech based on the content of the speech and therefore violates the constitutional right of free speech. (*Haddad v. Wall* (C.D.Cal. 2000) 107 F.Supp.2d 1230; *Gritchen v. Collier* (C.D.Cal. 1999) 73 F.Supp.2d 1148, revd. on other grounds *Gritchen v. Collier* (9th Cir. 2001) 254 F.3d 807.)

I

### FACTUAL AND PROCEDURAL BACKGROUND

California Highway Patrol (CHP) Officers Donovan Walker and Philip Husband arrested Bill John Kiousis for suspected drunk driving on December 5, 1997. Kiousis pled guilty to a "wet reckless," i.e., reckless driving with consumption of alcohol, on April 29, 1998. (Veh. Code, §§ 23103, 23103.5.)

After pleading guilty, Kiousis filed a citizen complaint against Walker with the CHP. Kiousis alleged that during the arrest Walker had used profanity in speaking to him, had threatened him with physical violence, and had threatened him with three days in jail if he did not take a blood test. Kiousis demanded "appropriate action up to and including termination" of Walker.

The CHP determined there was no merit to Kiousis's allegations, based largely on a tape recording which Walker had made of the traffic stop and arrest.

Walker then sued Kiousis pursuant to Civil Code section 47.5 (section 47.5). That section, enacted in 1982, provides in full: "Notwithstanding

Section 47, a peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made with knowledge that it was false and that [*sic*] it was made with spite, hatred, or ill will. Knowledge that the complaint was false may be proved by a showing that the complainant had no reasonable grounds to believe the statement was true and that the complainant exhibited a reckless disregard for ascertaining the truth." Walker's complaint asserted claims for libel and intentional and negligent infliction of emotional distress.

Kiousis moved to strike the complaint pursuant to Code of Civil Procedure section 425.16 (section 425.16), also known as the "SLAPP" (strategic lawsuits against public participation) statute. In part, Kiousis argued that Civil Code section 47.5 is unconstitutional because it selectively targets speech critical of police officers and therefore is an impermissible content-based regulation.

The court granted the motion to strike on the ground that Walker had failed to show he sustained any actual damage from Kiousis's complaint. Therefore, Walker could not show a probability of prevailing in his lawsuit, as required to defeat a motion to strike under section 425.16. Walker appealed.

## II

### DISCUSSION

#### A. *Burden of Proof and Standard of Review*

Section 425.16 applies to any cause of action arising from an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . .' " (§ 425.16, subd. (e).) Such a claim "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id.*, subd. (b)(1).) Section 425.16 "shall be construed broadly." (*Id.*, subd. (a).)

An act in furtherance of a person's right of petition or free speech includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e).) It also includes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (*Ibid.*)

Walker acknowledged at the hearing on Kiousis's Code of Civil Procedure section 425.16 motion that Kiousis's complaint was made in connection with an official proceeding authorized by law. He was correct. Penal Code section 832.5, subdivision (a) provides: "Each department or agency in this state that employs peace officers shall establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies . . . ." Walker therefore had to show a probability of prevailing in order to proceed with his suit.

 To show a probability of prevailing, a plaintiff must make a prima facie showing of facts which would, if proved, support a judgment in his or her favor. (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].) Whether the plaintiff has shown a probability of prevailing is reviewed independently on appeal. (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 721 [77 Cal.Rptr.2d 1], disapproved on another point in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1064 [82 Cal.Rptr.2d 10].) We affirm the judgment if it is correct on any legal ground, whether or not the trial court relied on that ground. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *R. P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146, 154 [99 Cal.Rptr.2d 425].)

B. *Did Walker Show a Probability of Prevailing?*

 1. *Emotional distress claims*

 Walker clearly did not show a probability of prevailing on his claims for intentional and negligent infliction of emotional distress. Those claims are barred by Civil Code section 47 (section 47).

Civil Code section 47 provides that a publication made in any "official proceeding authorized by law" is privileged. (Civ. Code, § 47, subd. (b).) As we have already seen, an investigation of a citizen's complaint against a law enforcement officer is an official proceeding authorized by law. (See Pen. Code, § 832.5, subd. (a).) A communication to an official agency which is designed to prompt action is considered a part of an official proceeding for purposes of Civil Code section 47. (*Long v. Pinto* (1981) 126 Cal.App.3d 946, 948 [179 Cal.Rptr. 182]; *King v. Borges* (1972) 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414].) Therefore, the privilege applied to Kiousis's complaint.

Where it applies, "the privilege of section 47 applies to bar *all* tort actions, except for malicious prosecution . . . ." (*Hunsucker v. Sunnyvale Hilton Inn*

(1994) 23 Cal.App.4th 1498, 1502 [28 Cal.Rptr.2d 722]; accord, *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Silberg v. Anderson* (1990) 50 Cal.3d 205, 215-216 [266 Cal.Rptr. 638, 786 P.2d 365].) Claims for intentional and negligent infliction of emotional distress, therefore, are barred. (*Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 45 [32 Cal.Rptr.2d 200, 876 P.2d 999]; *Jeffrey H. v. Imai, Tadlock & Keeney* (2000) 85 Cal.App.4th 345, 361 [101 Cal.Rptr.2d 916].)

Section 47.5 creates an exception to the privilege provided by section 47, but that exception by its terms only purports to authorize "an action for defamation." On the other hand, the privilege afforded by section 47 has been given "an expansive reach." (*Rubin v. Green, supra,* 4 Cal.4th 1187, 1194, fn. omitted; accord, *Knoell v. Petrovich* (1999) 76 Cal.App.4th 164, 169 [90 Cal.Rptr.2d 162].) Accordingly, the exception created by section 47.5 should be construed narrowly, to permit only a claim for defamation and not other claims, even though they rest on the same underlying conduct. Walker's claims for intentional and negligent infliction of emotional distress therefore are barred by section 47.

## 2. *Defamation claim*

■ Walker's remaining claim, for defamation, also would be barred by section 47 if it were not for section 47.5. Prior to the enactment of section 47.5 in 1982, it was established that a citizen complaint of police misconduct was absolutely privileged under section 47. (*Imig v. Ferrar* (1977) 70 Cal.App.3d 48, 54-57 [138 Cal.Rptr. 540].) Thus, Walker's defamation claim can proceed only if section 47.5 is valid.

After the trial court decision in this case, a federal district court in California held that section 47.5 is unconstitutional on its face as violative of the First and Fourteenth Amendments. The court concluded that "[b]y treating citizen complaints against police officers differently from complaints against all other government officers, § 47.5 makes an impermissible content-based discrimination against a type of speech." (*Gritchen v. Collier, supra,* 73 F.Supp.2d 1148, 1153 (*Gritchen*).)

The United States Court of Appeals for the Ninth Circuit later reversed the decision in *Gritchen.* The court held that the police officer, Collier, was not acting under color of state law in threatening to sue the complaining citizen, Gritchen, for defamation pursuant to section 47.5. Therefore, there was no federal jurisdiction. The court did not reach the question whether section 47.5 is constitutional. (*Gritchen v. Collier, supra,* 254 F.3d 807, 814.)

After the district court decision in *Gritchen,* but before the Ninth Circuit decision in that case, another federal district court in California similarly

held Civil Code section 47.5 to be unconstitutional as a content-based restriction on speech in violation of the First Amendment. (*Haddad v. Wall, supra,* 107 F.Supp.2d 1230, 1238-1239 (*Haddad*).) The same court, the following day, issued a decision holding Civil Code section 47.5's criminal counterpart, Penal Code section 148.6, unconstitutional under the same analysis. (*Hamilton v. City of San Bernardino* (C.D.Cal. 2000) 107 F.Supp.2d 1239, 1248.)[1] Penal Code section 148.6 makes it a misdemeanor to file any allegation of misconduct against a peace officer, knowing the allegation to be false.

█ Decisions of the lower federal courts interpreting federal law, in this case the federal Constitution, are persuasive but not binding on state courts. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352 [276 Cal.Rptr. 326, 801 P.2d 1077]; *Tully v. World Savings & Loan Assn.* (1997) 56 Cal.App.4th 654, 663 [65 Cal.Rptr.2d 545].) █ Kiousis, however, urges this court to follow the reasoning of the above decisions and hold section 47.5 to be unconstitutional.

█ A court will not decide a constitutional question " 'unless absolutely required to do so to dispose of the matter' " in which the question is raised. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225], quoting *People v. Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000].) If " ' "other grounds are available and dispositive of the issues of the case," ' " the court should rely on those grounds instead. (*Santa Clara County Local Transportation Authority, supra,* at p. 230.) We consider whether there are any such grounds in this case.

a. *Failure to prove actual damages*

█ The ground on which the trial court decided the case, Walker's failure to prove that he suffered any actual damages from Kiousis's complaint, does not support the judgment. █ As Walker pointed out, Civil Code section 45a provides that libel "which is defamatory of the plaintiff without the necessity of explanatory matter" is libel on its face. A publication which is reasonably susceptible of a defamatory meaning on its face is actionable without proof of special damages. (*Selleck v. Globe International, Inc.* (1985) 166 Cal.App.3d 1123, 1135 [212 Cal.Rptr. 838]; see generally *MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 549 [343 P.2d 36].) Special damages in this context include "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation . . . ." (Civ. Code, § 48a, subd. (4)(b).)

[1] This court has been advised that an appeal of the decision in *Haddad* is pending before the Ninth Circuit. We are unaware of any appeal in *Hamilton*.

A statement is not libelous on its face if "the defamatory meaning would appear only to readers who might be able to recognize it through some knowledge of specific facts and/or circumstances, not discernible from the face of the publication, and which are not matters of common knowledge rationally attributable to all reasonable persons . . . ." (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 5 [86 Cal.Rptr.2d 73].) That is not true here. ▆▆ Kiousis's citizen complaint alleged that, although he completed all field sobriety tests "in a courteous and unprovoking [manner]," Walker nonetheless (1) told Kiousis, "Put your fucking hands behind your head"; (2) "said something in regards to getting [Kiousis's] ass kicked"; and (3) told Kiousis at the jail that if he did not take a blood or breath test for alcohol, he would "be here for three days."

The defamatory meaning of these allegations would be immediately apparent to any reader without knowing any facts beyond the face of the complaint. A person reading the complaint would recognize it is not appropriate for a police officer during a traffic stop of a "courteous and unprovoking" citizen to use profanity, threaten physical violence, or threaten three days of jail for refusing a blood-alcohol test. Therefore, if libelous, the complaint was libelous on its face.

Kiousis points out that police officers have been held to be public officials for purposes of defamation claims. (*Gomes v. Fried* (1982) 136 Cal.App.3d 924, 932-934 [186 Cal.Rptr. 605]; see also *McCoy v. Hearst Corp.* (1986) 42 Cal.3d 835, 841, fn. 3 [231 Cal.Rptr. 518, 727 P.2d 711].) He argues that a defamation plaintiff who is a public official must produce evidence of actual damages in *all* cases, even those involving libel on its face. He relies on *New York Times Co. v. Sullivan* (1964) 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412] (*New York Times*).

▆▆ The United States Supreme Court in *New York Times* held that the federal Constitution requires "a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times, supra,* 376 U.S. at pp. 279-280 [84 S.Ct. at p. 726].) The court further held that Alabama law was inconsistent with this rule because, although it required proof of actual malice for punitive damages, where general damages were concerned malice was " 'presumed.' " (*Id.,* at pp. 283-284 [84 S.Ct. at p. 728].)

Kiousis interprets this holding to mean that under *New York Times* a public official is not entitled to a presumption of anything, whether or not state law

ordinarily provides for a presumption of damages for libel on its face. However, the court in *New York Times* only said that a public official may not rely on a presumption of *malice*. It did not purport to alter the rule that one otherwise entitled to recover for libel—i.e., in the case of a public official, one who has *proven* actual malice—can recover without proving special damages if the publication is libelous on its face. (See 2 Dobbs, The Law of Torts (2001) § 417, p. 1169 [where public official proves actual malice, *New York Times* rule "does not require proof of actual harm to reputation" (fn. omitted)].)

The trial court made no finding that Walker had not made a prima facie showing of malice sufficient to withstand a motion to strike under section 425.16. If Walker could prove malice, nothing in the *New York Times* rule would require him to prove special damages to recover for a publication which was libelous on its face, which Kiousis's complaint clearly was if it was libelous at all. Therefore, the court's finding that Walker failed to show actual damages cannot serve as a ground for upholding the judgment.

### b. *Failure to show knowing falsity and ill will*

Kiousis also argues Walker did not establish a probability that he could meet his burden of proving, as required by section 47.5, that Kiousis's complaint was false, or that it was made "with knowledge that it was false" and with "spite, hatred, or ill will." Kiousis points out that, after reviewing the tape recording of the stop and arrest, the CHP issued a censurable incident report to Officer Husband for making inappropriate comments to Kiousis. The tape showed that during the arrest Husband said to Kiousis: "Don't start talking shit to us then"; "Shut up then and take your medicine"; and "I'll talk to you how ever [*sic*] I please." When Kiousis said, "Fuck you," Husband said, "Hey, I can take those cuffs right off right now if that's what you want," apparently suggesting he and Kiousis could fight.

Kiousis argues the tape shows that inappropriate language and threats were used against him, though not by Walker. Therefore, he had a reasonable basis for filing his complaint and simply confused the two officers' identities.

There are several problems with Kiousis's argument. First, as noted *ante,* to resist a motion to strike under section 425.16, a plaintiff is only required to make a *prima facie showing* of facts which would, if proved, support a judgment in his or her favor. (*Kyle v. Carmon, supra,* 71 Cal.App.4th 901, 907.) As the California Supreme Court recently stated: " 'This court and the Courts of Appeal, noting the potential deprivation of

jury trial that might result were [section 425.16 and similar] statutes construed to require the plaintiff first to *prove* the specified claim to the trial court, have instead read the statutes as requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim. [Citations.]' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564]; accord, *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446]; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 654 [49 Cal.Rptr.2d 620].)

The Supreme Court described the operation of section 425.16 and similar statutes as " 'like a demurrer or motion for summary judgment in "reverse" ' . . . ." (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1123; accord, *Kyle v. Carmon, supra,* 71 Cal.App.4th 901, 910 ["[a] section 425.16 motion is in the nature of a motion for nonsuit, directed verdict, or summary judgment"]; *Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th at pp. 653-654; *Wilcox v. Superior Court, supra,* 27 Cal.App.4th 809, 823-824.) This means that a court hearing a motion under section 425.16 "cannot weigh [the defendant's evidence] against the plaintiff's affidavits, but must only decide whether the defendant's affidavits, *as a matter of law,* defeat the plaintiff's supporting evidence. [Citation.]" (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365 [102 Cal.Rptr.2d 864]; accord, *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 867 [44 Cal.Rptr.2d 46].) Thus, the court "accepts as true all evidence favorable to the plaintiff." (*Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 746 [36 Cal.Rptr.2d 687].)

 Here, accepting as true the evidence favoring Walker, we cannot say as a matter of law that his claims were defeated by the evidence. The tape recording failed to show that *either* officer at any time (1) told Kiousis, "Put your fucking hands behind your head"; (2) said anything about Kiousis getting his "ass kicked"; or (3) told Kiousis he would be in jail for three days if he did not take a blood-alcohol test.

With respect to the first allegation, the tape showed Walker said: "What I want you to do for me is to turn around, place your hands behind your head. Do that now. Interlace your fingers." There was no indication Walker used profanity at that time or any other time.

This point is significant. Walker was arresting Kiousis. Officers dealing with criminal suspects "may detain such persons at gunpoint, place them in handcuffs, remove them from their residences, order them into police cars and, in some circumstances, may even use deadly force." (*Mary M. v. City of*

*Los Angeles* (1991) 54 Cal.3d 202, 217 [285 Cal.Rptr. 99, 814 P.2d 1341].) As long as Walker behaved in a professional manner, as the evidence appeared to indicate he did, his conduct was appropriate. It was only by recasting Walker's statements as including profanity that Kiousis could accuse Walker of inappropriate conduct. A trier of fact could infer Kiousis acted with reckless disregard in making the accusation with no apparent support in the evidence.

With respect to Kiousis's second allegation, there simply was no indication in the tape that Walker at any time threatened Kiousis with physical violence. Certainly, Walker said nothing approaching the statement Kiousis attributed to him, about Kiousis getting his "ass kicked."

With respect to Kiousis's remaining allegation, again there was no support in the available record for Kiousis's version of the events. The tape showed only that Husband, not Walker, told Kiousis, "You'll just lose your license for a year if you don't take the test . . . ." That statement was not an inappropriate threat, it was an accurate statement of the law. (Veh. Code, § 13353, subd. (a)(1).)

Kiousis argues that the tape transcript is incomplete and unverified, with numerous portions designated as "inaudible." However, Walker submitted a declaration stating that the transcript was accurate and that he had corrected it after it was initially prepared. Moreover, Kiousis did not object to the court's consideration of the transcript, either in his papers filed in connection with his section 425.16 motion or at the hearing on the motion. In fact, Kiousis argued his position "[w]ithout challenging the completeness or accuracy of the tape" and attached a portion of the transcript to his own papers.

Kiousis's argument that he simply confused the identities of the two officers, while plausible, was not so compelling as to defeat a prima facie showing of knowledge and malice. For one thing, Kiousis never actually claimed that he mixed up the two officers. In addition, in his complaint Kiousis specifically distinguished between Walker and Husband. He asserted that after Walker threatened him he had a conversation with Husband, during which he complained about Walker's treatment of him, and Husband apologized. Under the circumstances, any claim that Kiousis was confused as to which officer was which would have been at least dubious. And even if the claim were persuasive, Husband did not say anything even close to the quoted statements Kiousis attributed to Walker in his complaint.

A plaintiff in a defamation case who is a public figure must prove by clear and convincing evidence that the defamatory statement was made

with knowledge that it was false, or with reckless disregard of whether it was false or not. (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 256 [208 Cal.Rptr. 137, 690 P.2d 610].) This heightened standard of proof must be taken into account in deciding a defendant's motion to strike a claim for defamation under section 425.16. (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 274 [105 Cal.Rptr.2d 674].)

But even in a public figure case, a defendant's knowledge of falsity or reckless disregard can be proved by circumstantial evidence. (*Reader's Digest Assn. v. Superior Court, supra*, 37 Cal.3d 244, 257.) Such factors as a failure to investigate the facts, or anger and hostility toward the plaintiff, may indicate that the defendant had serious doubts regarding the truth of the publication. (*Id.*, at p. 258.) The finder of fact must determine whether the publication was indeed made in good faith. (*Id.*, at p. 257.)

Here, there was enough circumstantial evidence to establish a prima facie showing of clear and convincing evidence that Kiousis made his complaint with knowledge of falsity and with ill will, as required by section 47.5. There is no indication Kiousis made any attempt to investigate the facts before submitting the complaint. His allegations were patently at odds with the actual events, as reflected in the tape recording.

Kiousis's ill will toward Walker also was evident from the tape recording, which showed that Kiousis said "[m]other fucker" and twice said "[f]uck you" as Walker was handcuffing him. Kiousis also called one of the officers, apparently Husband, "an asshole." Kiousis himself explicitly stated in his complaint that even though five months had passed since the arrest, he was "still very angry with [O]fficer D.C. Walker's behavior . . . ."

Under the circumstances, it would have been error to strike Walker's complaint under section 425.16 for failure to establish a prima facie case of knowledge of falsity and ill will. Therefore we cannot sustain the trial court's ruling based on Kiousis's proposed alternative ground.

## C. *Constitutionality of Section 47.5*

As we have found no nonconstitutional ground on which the matter can be disposed of, we consider Kiousis's contention that section 47.5 is unconstitutional. We first note that, although Kiousis contends only that the statute violates the federal Constitution, the analysis would be the same under the California Constitution. The California Supreme Court has held that, although the state Constitution provides greater protection of speech in some contexts, defamation is not one of those contexts. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 745-746 [257 Cal.Rptr. 708, 771 P.2d 406].)

 "The First Amendment generally prevents government from proscribing speech . . . because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." (*R.A.V. v. St. Paul* (1992) 505 U.S. 377, 382 [112 S.Ct. 2538, 2542, 120 L.Ed.2d 305] (*R.A.V.*).) Moreover, content-based regulations are invalid even where they target only speech which the government could prohibit entirely without offending the Constitution. Thus, "the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government." (*Id.*, at p. 384 [112 S.Ct. at p. 2543].)

With certain exceptions discussed, *post*, a content-based restriction on speech is unconstitutional unless it is supported by a compelling governmental interest and is narrowly drawn to serve that interest. (*Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd.* (1991) 502 U.S. 105, 118 [112 S.Ct. 501, 509-510, 116 L.Ed.2d 476]; see *R.A.V.*, *supra*, 505 U.S. at p. 395 [112 S.Ct. at p. 2549].) The first inquiry, therefore, is whether section 47.5 is a content-based regulation of speech.

1. *Is section 47.5 a content-based regulation of speech?*

The principal inquiry in determining whether a regulation of speech is content based is whether the government has adopted the regulation because of agreement or disagreement with the message it conveys. (*Turner Broadcasting System, Inc. v. FCC* (1994) 512 U.S. 622, 642 [114 S.Ct. 2445, 2459, 129 L.Ed.2d 497].) "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." (*Id.*, at p. 643 [114 S.Ct. at p. 2459].)

*R.A.V.* represents the United States Supreme Court's "latest word" on the subject of content-based regulation of speech. (*Gritchen v. Collier*, *supra*, 254 F.3d 807, 811.) *R.A.V.* involved a city ordinance which made it a misdemeanor to place on public or private property a symbol or writing which the defendant had reason to know would arouse " 'anger, alarm or resentment in others on the basis of race, color, creed, religion or gender . . . .' " (*R.A.V.*, *supra*, 505 U.S. at p. 380 [112 S.Ct. at p. 2541].) The court held that even assuming the statute criminalized only " 'fighting words' "—a category of speech which could be prohibited without offending the Constitution—the ordinance was facially unconstitutional. The ordinance prohibited otherwise permitted speech "solely on the basis of the subjects the speech addresses." (*Id.*, at p. 381 [112 S.Ct. at p. 2542], fn. omitted.) Thus, the ordinance violated the principle that the government may not regulate speech "based on hostility—or favoritism—towards the underlying message expressed." (*Id.*, at p. 386 [112 S.Ct. at p. 2545].)

Critical to the court's conclusion was the fact the ordinance criminalized *only* speech that would arouse others "on the basis of race, color, creed, religion or gender." As the court observed, "[d]isplays containing abusive invective, no matter how vicious or severe, are permissible unless they are addressed to one of the specified disfavored topics." (*R.A.V.*, *supra*, 505 U.S. at p. 391 [112 S.Ct. at p. 2547].) Thus, a person could express hostility on the basis of political affiliation, union membership, or homosexuality without violating the ordinance. (*Ibid.*) The court concluded the First Amendment did not permit the city "to impose special prohibitions on those speakers who express views on disfavored subjects." (*Ibid.*)

Moreover, the court in *R.A.V.* concluded, the ordinance went beyond mere content discrimination to "viewpoint discrimination." It prohibited those *opposed* to racial or religious tolerance from using fighting words, when *advocates* of tolerance could use the same words with impunity. Thus, one could not hold up a sign saying that all Catholics are misbegotten, but could hold up a sign saying that all anti-Catholic bigots are. The city had no authority "to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." (*R.A.V.*, *supra*, 505 U.S. at p. 392 [112 S.Ct. at p. 2548].)

In *In re M.S.* (1995) 10 Cal.4th 698 [42 Cal.Rptr.2d 355, 896 P.2d 1365], the California Supreme Court upheld Penal Code section 422.6 against a challenge based on *R.A.V.* Section 422.6 makes it a crime to interfere, by force or threat of force, with any person's exercise of any legal right or privilege because of the person's race, color, religion, ancestry, national origin, disability, gender, or sexual orientation. The court noted that section 422.6 focused on the defendant's *motivation*—racial or other bias—and not on the *content* of his or her speech. Thus, the defendant's threat did not have to mention "any particular characteristic" of the victim in order to be proscribed. This distinguished section 422.6 from the city ordinance in *R.A.V.*, which proscribed only speech that would arouse others *based on* their race, religion, or gender. (*In re M.S., supra*, at pp. 721-722.)

 Applying the principles articulated in these decisions, we conclude section 47.5 is content-based discrimination. As the federal district courts in *Gritchen* and *Haddad* noted, section 47.5 restricts defamatory speech against one group of public officials, peace officers, while leaving intact the privilege under section 47 for defamatory speech against all other public officials. (*Gritchen, supra*, 73 F.Supp.2d 1148, 1152; *Haddad, supra*, 107 F.Supp.2d 1230, 1234.) Whether the speech is actionable depends solely on its content. Speech which defames public officials other than peace officers is not actionable regardless of whether it is made with knowledge of falsity, malice, or ill will.

In addition, we note that, like the ordinance in *R.A.V.*, section 47.5 also discriminates based on viewpoint. Rather than carving out an exception for *all* defamatory statements made in an official investigation of alleged police misconduct, section 47.5 makes actionable only a defamatory complaint *against* a police officer. A defamatory statement *by* the police officer, or another witness, about the complainant or anyone else involved in the proceeding is not actionable.

Thus, if the officer or another witness falsely accuses the complainant of having brandished a weapon, threatened the officer, resisted arrest, or committed some other crime, the complainant has no right to sue for defamation under section 47.5, even though such an accusation obviously would tend to injure his or her reputation and, possibly, business interests or employment position.[2] This selective regulation of speech based on the content of the message it conveys "creates the possibility that the [government] is seeking to handicap the expression of particular ideas" by discouraging false complaints against peace officers while not making actionable defamatory statements about other persons involved in the same proceeding. (*R.A.V.*, *supra*, 505 U.S. at p. 394 [112 S.Ct. at p. 2549].) That possibility alone is enough to render section 47.5 presumptively invalid. (*R.A.V.*, *supra*, at p. 394 [112 S.Ct. at p. 2549].)

We therefore conclude section 47.5 restricts speech based on content, creating the possibility that the government is discriminating against a particular type of speech because of "disapproval of the ideas expressed." (*R.A.V.*, *supra*, 505 U.S. at p. 382 [112 S.Ct. at p. 2542].) As such, the statute is invalid unless it can be shown that in fact it does not pose a "significant danger of idea or viewpoint discrimination . . . ." (*Id.*, at p. 388 [112 S.Ct. at p. 2545].) We turn to that question next.

2. *Is section 47.5 permissible content-based discrimination?*

Our determination that section 47.5 is content based does not mean it is necessarily invalid. The United States Supreme Court in *R.A.V.* made it clear that "presumptive invalidity does not mean invariable invalidity . . . ." (*R.A.V.*, *supra*, 505 U.S. at p. 390, fn. 6 [112 S.Ct. at p. 2547].) The court discussed three types of cases involving "proscribable" speech— i.e., speech such as defamation, obscenity, or fighting words, which can constitutionally be proscribed notwithstanding the First Amendment—in which the government may discriminate within the category of proscribable speech based on content.

First, the government may do so "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech

---

[2]An officer who knowingly makes a false statement in a *crime report* is, however, subject to criminal liability under Penal Code section 118.1.

at issue is proscribable . . . ." (*R.A.V., supra,* 505 U.S. at p. 388 [112 S.Ct. at p. 2545].) Thus, the government could choose to prohibit only the most obscene obscenity, i.e., that which is "most patently offensive . . . ." In that event, there would be no significant danger of discrimination based on ideas or viewpoints. (*Ibid.*)

Second, the government can discriminate against proscribable speech that has particular "secondary effects" associated with it which are not common to the entire category of proscribable speech. An example of this kind of permissible discrimination would be a law prohibiting only obscene performances which involve minors. While other obscene performances are still obscene and therefore proscribable, they do not carry with them the "secondary" effect of corrupting minors. (*R.A.V., supra,* 505 U.S. at p. 389 [112 S.Ct. at p. 2546].)

Finally, the government may selectively restrict or prohibit speech where "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." As an example of such a case, the court said, "We cannot think of any First Amendment interest that would stand in the way of a State's prohibiting only those obscene motion pictures with blue-eyed actresses." (*R.A.V., supra,* 505 U.S. at p. 390 [112 S.Ct. at p. 2547].)

We consider whether section 47.5 fits into any of these three categories of permissible content-based discrimination.

### a. *Discrimination based on reason for proscribing entire class*

██ Under the first exception discussed in *R.A.V.,* the government may discriminate within a class of proscribable speech if it does so entirely based on this permissible reason for proscribing the entire class and not for some reason peculiar to the content of the particular speech involved. The court in *R.A.V.* concluded the ordinance in question could not be upheld based on this exception. The city had not "singled out an especially offensive mode of expression" by, for example, prohibiting "only those fighting words that communicate ideas in a threatening (as opposed to a merely obnoxious) manner." (*R.A.V., supra,* 505 U.S. at p. 393 [112 S.Ct. at p. 2549].) Instead, it had prohibited words that communicated messages of intolerance, regardless of how they were expressed. (*Id.,* at p. 394 [112 S.Ct. at p. 2549].)

Here, similarly, section 47.5 does not single out especially egregious defamatory speech as a basis for civil liability. The reason for proscribing defamatory speech as a class is to protect individuals against "the harm

inflicted on them by defamatory falsehood." (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 341 [94 S.Ct. 2997, 3008, 41 L.Ed.2d 789].) Yet section 47.5 does not make actionable only the most injurious defamatory speech, such as that which accuses its target of committing a crime. Rather, the statute makes it actionable falsely to accuse a peace officer not only of "criminal conduct," but also of ordinary "misconduct," or even of "incompetence." It does so while leaving intact the privilege protecting *any* defamation of a person in an official proceeding other than a peace officer. In other words, falsely accusing a peace officer of incompetence is actionable under section 47.5, but falsely accusing a political office holder of embezzling money from the government or spying for a foreign government is privileged under section 47.

Many other types of statements which are not actionable under Civil Code section 47.5 are at least as injurious as those that are. Physicians are at least as vulnerable to charges of incompetence as are law enforcement officers, as the Legislature has recognized in requiring that physicians be given at least 90 days' notice before they can be sued for malpractice. (Code Civ. Proc., § 364.) Yet complaints of physician incompetence to the Board of Medical Quality Assurance (now Medical Board of California) have been held to be privileged under Civil Code section 47. (*Hogen v. Valley Hospital* (1983) 147 Cal.App.3d 119, 122-123 [195 Cal.Rptr. 5]; *Long v. Pinto, supra,* 126 Cal.App.3d 946, 948.)

Attorneys, like police officers, frequently deal with hostile members of the public, including parties to whom their clients are adverse and, sometimes, the clients themselves. (See generally *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465 [110 Cal.Rptr.2d 370, 28 P.3d 116].) The motivation for such persons to make false accusations against attorneys is strong, and the potential harm to an attorney's reputation, and ultimately his or her right to practice law, is significant. Yet complaints about attorneys to the State Bar are absolutely privileged under section 47. (*Lebbos v. State Bar* (1985) 165 Cal.App.3d 656, 667-669 [211 Cal.Rptr. 847]; *Chen v. Fleming* (1983) 147 Cal.App.3d 36, 39-41 [194 Cal.Rptr. 913].)

Political office holders, by virtue of their widespread exposure, are subject to scrutiny by a much greater number of people than are peace officers and are required to take often controversial and unpopular public positions as part of their duties. (See, e.g., *Richmond v. Thompson* (1995) 79 Wash.App. 327, 335 [901 P.2d 371, 375] ["a United States Attorney is a more prominent law enforcement official than a state trooper"].) Yet such officeholders enjoy no protection from defamatory complaints about their performance as do peace officers under section 47.5.

Certain language in *R.A.V.* might be interpreted to authorize selective regulation of content-based speech, based on the status of the parties who are the targets of the speech. The court in *R.A.V.* stated, "the Federal Government can criminalize only those threats of violence that are directed against the President, see 18 U.S.C. § 871—since the reasons why threats of violence are outside the First Amendment (protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur) have special force when applied to the person of the President." (*R.A.V.*, *supra*, 505 U.S. at p. 388 [112 S.Ct. at p. 2546].) The court cited *Watts v. United States* (1969) 394 U.S. 705 [89 S.Ct. 1399, 22 L.Ed.2d 664] (*Watts*).

*Watts* involved a prosecution under title 18 United States Code section 871, which makes it a crime to threaten to kill or inflict bodily harm on the President of the United States, the President-elect, the Vice-President or other officer next in succession to the office of President, or the Vice-President-elect. The court held the statute was constitutional on its face, because "[t]he Nation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing him to perform his duties without interference from threats of physical violence." (*Watts*, *supra*, 394 U.S. at p. 707 [89 S.Ct. at p. 1401].) However, the court did not address whether the statute created any constitutional problem by not criminalizing threats against other public officials; it appears that question was not raised.

Moreover, for *Watts*'s reasoning to support section 47.5, it would have to be shown that California's interest in protecting police officers as a group from defamation is comparable to the national interest in protecting the office of the President, so as to justify singling out defamation of police officers for civil liability. As discussed *post*, in view of the fact no other state in the union affords special treatment for defamation of police officers, it is doubtful such a compelling interest exists.

The *R.A.V.* court also said that "a prohibition of fighting words that are directed at certain persons or groups . . . would be *facially* valid if it met the requirements of the Equal Protection Clause . . . ." (*R.A.V.*, *supra*, 505 U.S. at p. 392 [112 S.Ct. at p. 2548].) It could be argued that section 47.5 is simply a prohibition of defamation that is directed at a certain group, i.e., peace officers, and as such would be valid if it met the requirements of the equal protection clause.

The *R.A.V.* court did not say what equal protection requirements would apply to a selective prohibition of proscribable speech. As a general

matter, "[l]ike the free speech and press provisions of the First Amendment, the equal protection clause of the Fourteenth Amendment generally prohibits the government from drawing content-based distinctions between speech activities." (*Berry v. City of Santa Barbara* (1995) 40 Cal.App.4th 1075, 1086 [47 Cal.Rptr.2d 661].) When a government regulation does discriminate among speech-related activities, " 'the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized.' " (*Ibid.*, quoting *Carey v. Brown* (1980) 447 U.S. 455, 461-462 [100 S.Ct. 2286, 2291, 65 L.Ed.2d 263, 269-270].)

As discussed *post*, this is the same standard by which First Amendment challenges to content-based speech regulation are analyzed. Thus it appears the equal protection analysis would be essentially the same as the First Amendment analysis. As we conclude *post*, that section 47.5 is not supported by a compelling governmental interest, nor is it narrowly tailored to serve such an interest, section 47.5 cannot be validated under an equal protection analysis either, as a proscription on defamation "directed at certain persons or groups."

In sum, section 47.5's wide disparity in treatment of defamatory statements based solely on whether they are directed at peace officers strongly suggests section 47.5 is not merely a proscription against the most injurious subcategory of defamation, but rather an impermissible discrimination based on the content of the message the defamatory statements convey. Consequently, section 47.5 cannot be supported under the exception recognized in *R.A.V.* for discrimination based entirely on the underlying reason for proscribing the proscribable class of speech.

b. *Secondary effects*

Section 47.5 also cannot be justified based on the second exception recognized in *R.A.V.*, which permits discrimination based on the "secondary effects" associated with particular speech. In rejecting the argument that the ordinance in *R.A.V.* was aimed only at "secondary effects" because it sought to prevent victimization of traditional victims of group discrimination, the court in *R.A.V.* said: " 'Listeners' reactions to speech are not the type of "secondary effects" ' " which may properly serve as a basis for content-based regulation. " 'The emotive impact of speech on its audience is not a "secondary effect." ' " (*R.A.V.*, *supra*, 505 U.S. at p. 394 [112 S.Ct. at p. 2549], quoting *Boos v. Barry* (1988) 485 U.S. 312, 321 [108 S.Ct. 1157, 1164, 99 L.Ed.2d 333].) Rather, the "persuasive (or repellant) force" of speech is a " 'primary' effect . . . ." (*R.A.V.*, *supra*, at p. 394, fn. 7 [112 S.Ct. at p. 2549].)

Section 47.5's discrimination within the category of defamatory speech is based on the effect of the speech on listeners. It seeks to protect peace officers' reputations and careers from unwarranted disparagement. The content of the speech—the fact it attacks peace officers' performance—is the reason for making the speech actionable, not some other effect unrelated to its content. Accordingly, there is no basis for concluding section 47.5 is justified based on secondary effects associated with the kind of speech it regulates.

### c. *No realistic possibility of suppression of ideas*

There also is no basis for concluding this case falls within *R.A.V.*'s remaining exception, which applies where the nature of the content-based discrimination is such that "there is no realistic possibility that official suppression of ideas is afoot." (*R.A.V.*, *supra*, 505 U.S. at p. 390 [112 S.Ct. at p. 2547].) We have already pointed out that section 47.5 makes actionable relatively benign charges of "incompetence" against peace officers but not far more serious accusations of criminal conduct against other officials and that it protects false accusations by or in support of peace officers during an official investigation while imposing liability for false accusations against them. By making speech actionable or not depending solely on the target of the speech and the position advocated by the speaker, section 47.5 refutes any suggestion there is no realistic possibility of official suppression of ideas.

### 3. *Is section 47.5 supported by a compelling governmental interest?*

Since we have concluded section 47.5 is content-based regulation of speech and does not fall within any of the exceptions recognized in *R.A.V.*, the statute is only constitutional if it is supported by a compelling governmental interest and is narrowly tailored to serve that interest. (*Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd.*, *supra*, 502 U.S. 105, 118 [112 S.Ct. 501, 509]; see *R.A.V.*, *supra*, 505 U.S. at p. 395 [112 S.Ct. at pp. 2549-1250].) ▮▮ In turning to that question, we observe that courts "apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." (*Turner Broadcasting System, Inc. v. FCC*, *supra*, 512 U.S. at p. 642 [114 S.Ct. at p. 2459].)

▮▮ The obvious state interest underlying section 47.5 is the deterrence of false complaints against law enforcement officers which might inhibit them in the vigorous performance of their duties. While that interest has been recognized as an important one, it has not been thought to outweigh the

competing interest in the free airing of claims of possible police misconduct. Quite to the contrary, the court in *Imig v. Ferrar, supra*, 70 Cal.App.3d 48 observed: " 'The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential.' . . . [¶] . . . We agree with plaintiff that it is distressing and demoralizing for police officers to be subjected to false accusations of brutality, but that may be one of the crosses that a police officer must bear, in light of the power and deadly force the state places in his hands." (*Id.*, at p. 56.)

Similarly, it has been recognized that "a state police corps' performance of its duties is a matter of public concern . . . ." (*White Plains Towing Corp. v. Patterson* (2d Cir. 1993) 991 F.2d 1049, 1060.) The United States Supreme Court also has observed that publication of information relating to alleged governmental misconduct is "speech which has traditionally been recognized as lying at the core of the First Amendment." (*Butterworth v. Smith* (1990) 494 U.S. 624, 632 [110 S.Ct. 1376, 1381, 108 L.Ed.2d 572].) A law like section 47.5, which poses a risk of chilling citizens' exercise of their right to complain of official misconduct, therefore must be justified by a governmental interest that is truly compelling.

Presumably, that is why, apparently, no state other than California has elected to single out defamation of peace officers for disparate treatment. The district court in *Gritchen* appended to its opinion a survey of the laws of all 50 states concerning privileged publications. The survey showed that only California permits a defamation claim for the filing of a citizen complaint against a police officer, while barring claims for complaints against all other public officials. (*Gritchen, supra*, 73 F.Supp.2d at pp. 1154-1164.)

Most states, unlike California, do not provide an absolute privilege for complaints against public officials. (*Gritchen, supra*, 73 F.Supp.2d at pp. 1154-1164; see also *Gritchen v. Collier, supra*, 254 F.3d at p. 810.) However, apparently no other state provides an absolute privilege but does not extend it to complaints against police officers. Oklahoma, for example, has a statute which is virtually the same as section 47, affording an absolute privilege for statements made in any "proceeding authorized by law." (Okla. Stat. tit. 12, § 1443.1.) Oklahoma courts have held under that statute that citizen complaints against police officers are absolutely privileged. (See, e.g., *White v. Basnett* (Okla.Ct.App. 1985) 700 P.2d 666, 667-668, citing *Imig v. Ferrar, supra*, 70 Cal.App.3d 48, 52; *Hennessee v. Mathis* (Okla.Ct.App. 1987) 737 P.2d 958, 961.)

Florida has a statute, known as the "Policeman's Bill of Rights," which provides that a law enforcement officer may bring a civil suit for damages suffered during the performance of the officer's official duties. (Fla. Stat. § 112.532(3).) The Supreme Court of Florida has held that the statute, properly interpreted, is not an unconstitutional restriction on the rights of citizen complainants, because it gives officers no right to sue for defamation beyond what they would have under the common law. (*Mesa v. Rodriguez* (Fla. 1978) 357 So.2d 711, 713.) In a subsequent opinion, therefore, another Florida court concluded a citizen's complaint was absolutely privileged under the common law, notwithstanding the statute. (*Gray v. Rodriguez* (Fla.Dist.Ct.App. 1986) 481 So.2d 1298, 1330.)

It would be hard to conclude that California's interest in protecting officers from false complaints is so compelling as to justify engaging in "presumptively invalid" content-based speech discrimination (*R.A.V.*, *supra*, 505 U.S. at p. 382 [112 S.Ct. at p. 2542]) when no other state apparently has found it necessary to do so. For that reason, and in view of the substantial importance of preserving citizens' ability to seek redress for official misconduct, we conclude section 47.5 is not justified by a compelling governmental interest sufficient to overcome its potential for abridgement of constitutional rights as discussed above.

### 4. *Is section 47.5 narrowly tailored?*

Even where a content-based regulation promotes a compelling governmental interest, it is valid "only where it is '*necessary* to serve the asserted [compelling] interest' . . . ." (*R.A.V.*, *supra*, 505 U.S. at p. 395 [112 S.Ct. at p. 2549].) "The existence of adequate content-neutral alternatives thus 'undercut[s] significantly' any defense of such a statute . . . ." (*Ibid.*)

The court in *R.A.V.* concluded that the ordinance in question was not reasonably necessary to serve the compelling governmental interest of ensuring the basic human rights of groups historically subjected to discrimination. The court observed that "[a]n ordinance not limited to the favored topics . . . would have precisely the same beneficial effect." (*R.A.V.*, *supra*, 505 U.S. at p. 396 [112 S.Ct. at p. 2550].)

Here, similarly, there are ways other than the content-based discrimination imposed by Civil Code section 47.5 to ensure that peace officers' careers are not unduly jeopardized by unfounded citizen complaints. The Legislature already has taken such measures. Penal Code section 832.7, subdivision (a) provides that peace officer personnel records are confidential and shall not be disclosed except on motion and court order. Penal Code section 832.5,

subdivision (c) provides that any citizen complaints that have been determined to be "unfounded" shall not be maintained in the officer's general personnel file. In addition, any such complaints shall be removed from the officer's general personnel file prior to any official determination regarding promotion, transfer, or disciplinary action by the employing agency. (Pen. Code, § 832.5, subd. (b).)

Similarly, there are other means to deter false accusations of misconduct than allowing an action for defamation. As the courts in *Gritchen* and *Haddad* pointed out, a law enforcement agency could require citizen complaints to be made under oath, so that false complaints would be punishable as perjury. (*Gritchen, supra,* 73 F.Supp.2d 1148, 1153; *Haddad, supra,* 107 F.Supp.2d 1230, 1238; see Pen. Code, § 129.)

The state might also do as most other states do and simply decline to provide an absolute privilege for statements made during a misconduct investigation, regardless of who makes them or about whom they are made. Then false statements by officers or in support of them would be subject to the same potential liability as false statements about them. What the state cannot do is adopt a restriction which selectively targets only speech which is critical of peace officers, unless that restriction is necessary to serve a compelling governmental interest. As we find no such necessity in this case, we conclude section 47.5 is unconstitutional on its face.

### III

### DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal and attorney fees pursuant to section 425.16, subdivision (c) in an amount to be determined by the trial court.

McKinster, Acting P. J., and Ward, J., concurred.