[Crim. No. 35951. Second Dist., Div. Five. Dec. 18, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE ALVIN LAWSON et al., Defendants and Appellants.

COUNSEL

Alfred Bornstein for Defendants and Appellants.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and John W. Messer, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

**ASHBY, J.**—Defendants appeal from their conviction for falsely reporting a crime to law enforcement officers. (Pen. Code, § 148.5.) The matter is before us on transfer from the Appellate Department of the Los Angeles County Superior Court. (Rule 62(a), Cal. Rules of Court.)

The incident giving rise to the charges grew out of a labor relations dispute at American Biltrite Corporation (the plant). Defendants were union members who were picketing in front of the plant. James Sylvester, a nonstriking plant employee, was leaving for home after having worked the night shift. He was driving a pickup truck. As Sylvester left the plant premises, his truck and defendant Lawson's body collided. Sylvester continued on his way. Defendants ran to their own vehicles which were parked nearby and drove off after Sylvester. Robert Johnston, a plant security guard who had observed the incident, called the sheriff's department.

Deputy Sheriff Hoenshell arrived at the plant some 15 minutes later. By the time he got there, defendants had returned to the location. Hoenshell interviewed defendants. Crawford urged Lawson to make a report to the deputy. The report which Hoenshell took was admitted into evidence. We quote it:

"He [Lawson] was walking across the driveway at the location which is American Biltrite Company in a north to south direction. The victim was walking a picket line at the location regarding a Teamsters' strike.

"He observed the suspect's vehicle drive directly at him at a fairly high rate of speed. The victim advises that he was struck on the lower legs and tossed forward onto the truck's hood, striking his cheek. The victim then jumped backwards, falling to the ground and out of the suspect's way.

"At this point the suspect drove off, burning rubber, to northbound Valley View and out of sight.

"Victim complained of a pain in his left cheek."[1] Crawford confirmed Lawson's story to the deputy.

At the trial, Sylvester testified that he had stopped outside the plant gate, some 75 feet from the street, and had then proceeded toward the street when a break in traffic came. Lawson kept walking in front of Sylvester's truck, blocking his exit. Sylvester slammed on his brakes and skidded sideways. While the truck was still moving at two or three miles an hour, Lawson vaulted onto the hood, then jumped off. Sylvester testified that he thought Lawson vaulted onto the truck in order to avoid being hit and that he did not know if he struck Lawson or if Lawson hit him.

Immediately after the collision, Sylvester drove off. He testified that defendants followed him; that he was forced to stop by a lowered gate at a railroad crossing; that defendants made menacing gestures to him; and that being afraid of defendants he made a U-turn, proceeded the wrong way down the street to escape from them and went home.

Johnston, the security guard, testified that as Sylvester started to drive out of the driveway, Lawson stepped into his path; that Sylvester slammed on his brakes in an effort to stop and the truck swerved to the right; that Lawson jumped in the air, his hands striking the hood of the truck and bounced back off the truck, landing on his feet and staggering backwards.

Thomas Boyer, another nonstriking plant employee, testified that he left the plant just after Sylvester did. He too got stopped at the railroad crossing. Defendants came over to Boyer's truck. An altercation ensued at the conclusion of which Lawson punched Boyer in the mouth. Defendants apparently then returned to the plant. Boyer also went back to the plant where he retaliated against Lawson by punching him in the face.

Crawford was charged with battery on Boyer. This was an error, the People having intended to charge Lawson. At the conclusion of the Peo-

---

[1]The language of the report substantially corresponds with Hoenshell's trial testimony.

ple's case, Crawford moved to dismiss the battery count. (Pen. Code, § 1118.1.) The People sought to amend the complaint to conform to the proof at trial by naming Lawson instead of Crawford on the battery count. The court ruled that the motion came too late, and since there was no evidence that Crawford had committed battery on Boyer, count I was dismissed. A jury found both defendants guilty on count II, the Penal Code section 148.5 violation.

■ On appeal defendants first contend that the court erred in admitting testimony about acts of vandalism at the plant at a time prior to the subject incident. Specifically, Boyer testified that he had seen three vehicles struck by picket signs and that there had been broken windows in the plant. He had not seen defendants involved in these prior acts of vandalism. In fact he had only seen them picketing peacefully.

The key issue before the jury was whether Sylvester deliberately tried to run down Lawson, or whether Lawson deliberately stepped into the path of Sylvester's truck and then falsely told police that Sylvester deliberately ran him down, knowing that this was false. The testimony complained of demonstrated that there was animosity between the strikers on the one hand and management and nonstriking employees on the other. This fact was not, in and of itself, detrimental to defendants who could only have benefited from a showing that Sylvester bore them ill will. Since defendants were not implicated in the prior acts of vandalism, the evidence, even if improperly admitted, was not prejudicial.

Defendants also complain that Sylvester was permitted to testify that he had seen defendants strike a delivery truck with their picket signs several hours before Sylvester left the plant.[2] This testimony was elicited to explain why Sylvester had stopped 75 feet from the street. No objection was made to this testimony at the trial and objection is therefore deemed waived.[3]

■ Defendants next contend that the prosecutor misstated evidence and engaged in fanciful speculations in the course of her closing arguments. The jury was properly advised, both during argument and afterward, that they were the sole judge of the facts, and that they must

---

[2]This was an incident separate and distinct from the prior acts of vandalism about which Boyer testified.

[3]Johnston also testified without objection to the incident involving defendants striking the delivery truck. The present objection, again, comes too late.

make their factual determinations based on the evidence, not on counsel's arguments. The prosecutor labeled her speculations as such. The judge advised the jury that her theories were just argument which they could accept or reject. Defendants have failed to show misconduct, let alone prejudice.

■   Defendants next contend that the court erred in refusing a proffered instruction advising the jury that pursuant to Vehicle Code section 21952 it was a misdemeanor for a motorist crossing a sidewalk to fail to yield the right of way to a pedestrian. The argument misconceives the essence of a Penal Code section 148.5 violation.

Penal Code section 148.5 provides: "Every person who reports to any police officer, sheriff, district attorney, deputy sheriff, deputy district attorney, or member of the California Highway Patrol that a felony or misdemeanor has been committed, knowing such report to be false, is guilty of a misdemeanor."

■   A person who reports the commission of two separate offenses cannot escape liability under section 148.5 if one of the reported offenses in fact occurred, but the other did not. For instance, if a homeowner reports to police that a burglar broke into his home and stole a valuable painting, when in fact the burglar broke in but was scared off before he could take anything, the homeowner would still be guilty of violating section 148.5, even though the entry itself constituted a felony.

■   Similarly, in the instant case, the jury was asked to decide whether Sylvester attempted to run Lawson down, conduct which would have constituted assault with a deadly weapon, or whether Lawson stepped into the path of Sylvester's truck. They obviously believed that the latter occurred and that Lawson reported the former knowing it to be false. Even if they had been instructed on the violation of Vehicle Code section 21952 and even if they had believed that Sylvester violated section 21952, that would not have negated their finding that defendants falsely reported conduct amounting to assault with a deadly weapon.

What we have said heretofore disposes of defendants' further contentions that the court erred in instructing the jury on the definition of

assault with a deadly weapon, and that the evidence was insufficient to support the conviction.[4]

■ Defendants' contention that Penal Code section 148.5 is unconstitutionally vague is itself rather vague. It seems to center on whether the words "false report" give sufficient notice as to their meaning. There is nothing esoteric about the meaning of either word. The constitutional argument is devoid of merit.

■ Finally, defendants contend that the Legislature did not intend Penal Code section 148.5 to apply to a situation in which police respond to a location at the behest of a third party and solicit information about an incident which has occurred, but only to those situations where the defendant seeks out the police to report an incident that did not occur. Nothing in the language of section 148.5 supports this limited construction of its meaning. A person who voluntarily supplies information about a purported crime to a law enforcement officer makes a report, within the meaning of the statute, whether the information is supplied in response to a police inquiry or is unsolicited. The damage which section 148.5 seeks to avoid—waste of law enforcement time and money, defamation of innocent reputations—is just as likely to occur in a situation where the police have been called to a location by a third party, as it is when the defendant calls the police to the location or shows up at a police station and makes the false report.

Although defendants may not have expected or intended that law enforcement officers would be summoned to the plant, they took advantage of the situation, which they in fact had created, to attempt to implicate Sylvester in a criminal act. This is not the only situation in which the potential for vindictive mischief exists. Police may be called to a hospital by doctors treating a gunshot wound, they may be called to a residence by neighbors who are alarmed by the sounds of a domestic dispute. If the gunshot wound was self-inflicted, but the victim accuses someone else of having shot him, or if the female party to the domestic dispute accuses the male of having assaulted her when in fact he has not, there is no rational reason to exclude such false reports from the purview of the statute or to believe that the Legislature intended to do so.

---

[4]Through inadvertence the jury was given a verdict form on the battery count and returned a guilty verdict. As to this count, the evidence was insufficient, but since the court had already dismissed count I, the jury's act had no effect.

Defendants contend that construing the statute to apply to their situation will discourage witnesses to criminal incidents from speaking to police officers. We are not persuaded. The statute prohibits only knowing falsehoods. This requirement of scienter protects witnesses who honestly misperceive facts. Those who knowingly give false information to police officers should be discouraged from doing so.

Finally, at oral argument defendants seemed to imply that the questioning of witnesses in a setting such as this one is inherently coercive, the corollary presumably being that being confronted by a police interrogator the witness feels compelled to say something and so rather than saying something incriminating he says something untrue. There are constitutional protections which can be invoked when a situation becomes coercive. (*Miranda v. Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974].) No objections were raised below that defendants were entitled to *Miranda* warnings at the time they made their report. The evidence was that Crawford, in the officer's presence, urged Lawson to make the report.

The statute does not infringe upon the privilege against self-incrimination. It does not punish honest mistakes. It is not unconstitutionally vague.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.