[No. S102722. Dec. 5, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
SHAUN STANISTREET, Defendant and Appellant.

THE PEOPLE, Plaintiff and Respondent, v.
BARBARA JOYCE ATKINSON, Defendant and Appellant.

**COUNSEL**

Andrew Wolf for Defendant and Appellant Shaun Stanistreet.

Steven Warner for Defendant and Appellant Barbara Joyce Atkinson.

ACLU Foundation of Southern California, Daniel P. Tokaji, Mark D. Rosenbaum; ACLU Foundation of Northern California and Alan L. Schlosser for Defendants and Appellants.

Douglas E. Mirell and Karen R. Thorland for National Association for Citizen Oversight of Law Enforcement and Professor Samuel Walker as Amici Curiae on behalf of Defendants and Appellants.

Michael D. Bradbury, District Attorney, Michael D. Schwartz and Douglas H. Ridley, Deputy District Attorneys, for Plaintiff and Respondent.

Lewis, D'Amato, Brisbois & Bisgaard, Joseph Arias and Christopher D. Lockwood for City of San Bernardino as Amicus Curiae on behalf of Plaintiff and Respondent.

Rains, Lucia & Wilkinson and Alison Berry Wilkinson for Peace Officers' Research Association of California Legal Defense Fund as Amicus Curiae on behalf of Plaintiff and Respondent.

Jones & Mayer, Martin J. Mayer and Michael R. Capizzi for California State Sheriff's Association, California Police Chief's Association and California Peace Officer's Association as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

CHIN, J.—Penal Code[1] section 148.6 makes it a misdemeanor to file an allegation of misconduct against a peace officer knowing the allegation to be false. We must decide whether that section violates constitutional free speech rights. Relying primarily on *R.A.V. v. St. Paul* (1992) 505 U.S. 377 [112 S.Ct. 2538, 120 L.Ed.2d 305] (*R.A.V.*), defendants argue, and the Court of Appeal found, that section 148.6 is unconstitutional because it proscribes knowingly false accusations of misconduct against peace officers only and not against others. "By protecting only peace officers," the Court of Appeal said, "section 148.6 selectively prohibits expression because of its content. It therefore violates the First Amendment to the United States Constitution." We conclude that section 148.6 is constitutional on its face.

Section 148.6 proscribes only constitutionally unprotected speech—knowingly false statements of fact. Moreover, it does not apply to all accusations of misconduct against peace officers but only to complaints filed with a law enforcement agency in a way that legally obligates the agency to investigate the complaint. The circumstance that it covers only those persons—peace officers—who will be the subject of the mandatory investigation does not render it unconstitutional.

### I. FACTS AND PROCEDURAL HISTORY

The Court of Appeal summarized the underlying facts. "In a written complaint filed with the Oxnard Police Department, defendants Shaun Stanistreet and Barbara Joyce Atkinson accused an Oxnard police officer of committing lewd conduct at a Police Activities League (PAL) gathering. PAL is a police-sponsored group that works with at-risk youth. The officer was director of PAL. The charges proved to be false."

A jury found defendants guilty of violating section 148.5 (filing a knowingly false report of a criminal offense) and section 148.6, both misdemeanors. The trial court had instructed the jury that an element of each offense was that the defendants knew the allegation was false. Over a dissent, the appellate division of the superior court affirmed the judgments. The Court of Appeal transferred the case for decision (Cal. Rules of Court, rule 62) and reversed the judgments. It found that section 148.5 does not apply to complaints asserting misconduct by police officers and that section 148.6 is unconstitutional.

We granted the People's petition for review to decide whether section 148.6 is unconstitutional on its face.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

## II. Discussion

### A. *Section 148.6*

Section 148.6, subdivision (a)(1), provides: "(1) Every person who files any allegation of misconduct against any peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, knowing the allegation to be false, is guilty of a misdemeanor."[2]

The Legislature first enacted section 148.6 in 1995. (Stats. 1995, ch. 590, § 1; Assem. Bill No. 1732 (1995-1996 Reg. Sess.).) At that time, a different statute made (and still makes) it a misdemeanor to report a felony or misdemeanor knowing the report to be false. (§ 148.5.) However, the courts had interpreted section 148.5 as not applying to complaints of police misconduct from members of the public. (*Pena v. Municipal Court* (1979) 96 Cal.App.3d 77, 83 [157 Cal.Rptr. 584]; *People v. Craig* (1993) 21 Cal.App.4th Supp. 1, 3, 6; see *San Diego Police Officers Assn. v. San Diego Police Department* (1999) 76 Cal.App.4th 19, 22-23 [90 Cal.Rptr.2d 6].) The Legislature enacted section 148.6 to fill this gap.

The Court of Appeal recently explained the background leading to section 148.6's enactment. "The Legislature noted that since the Rodney King incident in March 1991, law enforcement agencies throughout the state had 'revised their citizen complaint procedures to promote greater accountability on the part of their line officers.' (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1732 (1995-1996 Reg. Sess.).) However, a 'glaringly negative side-effect which has resulted [was] the willingness on the part of many of our less ethical citizens to maliciously file false allegations of misconduct against officers in an effort to punish them for simply doing their

---

[2]The rest of section 148.6, subdivision (a), provides: "(2) Any law enforcement agency accepting an allegation of misconduct against a peace officer shall require the complainant to read and sign the following advisory, all in boldface type: You have the right to make a complaint against a police officer for any improper police conduct. California law requires this agency to have a procedure to investigate citizens' complaints. You have a right to a written description of this procedure. This agency may find after investigation that there is not enough evidence to warrant action on your complaint; even if that is the case, you have the right to make the complaint and have it investigated if you believe an officer behaved improperly. Citizen complaints and any reports or findings relating to complaints must be retained by this agency for at least five years.

"It is against the law to make a complaint that you know to be false. If you make a complaint against an officer knowing that it is false, you can be prosecuted on a misdemeanor charge."

"I have read and understood the above statement.

"_____

"Complainant

"(3) The advisory shall be available in multiple languages." (Boldface type omitted.)

jobs.' (*Ibid.*) Against this backdrop, the Legislature enacted section 148.6, in an attempt to curb a perceived rising tide of knowingly false citizens' complaints of misconduct by officers performing their duties." (*San Diego Police Officers Assn. v. San Diego Police Department, supra,* 76 Cal.App.4th at p. 23.)

The bill's author provided additional background: "Yearly hundreds of unfounded and false complaints are filed against Peace Officers. In the Los Angeles County Sheriff's Department alone, over 500 complaints were received of which approximately 60 to 70 % were unfounded. [¶] This bill will help prevent frivolous complaints which can affect the individual officer's future. For example, a Deputy Sheriff on a list for promotion to Sergeant receives a false report of misconduct, after which his promotion is deferred until the matter is resolved. After which, the complaint being found ungrounded, the Deputy has no recourse for any financial loss due to the delay." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1732, *supra,* p. 2.) A Senate committee report explained that section 832.5 requires complaints against peace officers be investigated and the records retained for at least five years. It noted concerns with fraudulent complaints and the "adverse impact upon a deputy's job mobility and promotional opportunity" these complaints can cause until they are resolved. (Sen. Com. on Criminal Procedure, Analysis of Assem. Bill No. 1732 (1995-1996 Reg. Sess.) pp. 2, 4.)

Thus, section 148.6 fills the gap created when the courts interpreted section 148.5 as not applying to complaints of police misconduct. But it does not merely extend section 148.5's protection to peace officers. Section 148.5 applies only to knowingly false reports "that a felony or misdemeanor has been committed," i.e., to reports of a *criminal* offense. By contrast, section 148.6 applies to all "citizens' complaints of police misconduct during the performance of an officer's duties that may or may not rise to the level of a criminal offense." (*San Diego Police Officers Assn. v. San Diego Police Department, supra,* 76 Cal.App.4th at p. 23.) Accordingly, section 148.6 gives protection to peace officers that the Legislature has not given to others. As the Court of Appeal put it in this case, "It is not a crime to knowingly make such an accusation against a firefighter, a paramedic, a teacher, an elected official, or anyone else."

On the other hand, as the Senate committee report noted, the Penal Code also requires that every department or agency that "employs peace officers shall establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies, and shall make a written description of the procedure available to the public," and that

"[c]omplaints and any reports or findings relating to these complaints shall be retained for a period of at least five years." (§ 832.5, subds. (a), (b).) These provisions similarly apply only to complaints against peace officers. Section 832.5 does not require investigation or lengthy retention of such accusations against firefighters, paramedics, teachers, elected officials, or others.

## B. *General Principles*

 ██ The right to criticize the government and governmental officials is among the quintessential rights Americans enjoy under the First Amendment to the United States Constitution and Californians enjoy under the California Constitution, article I, section 2.[3] "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government. The First and Fourteenth Amendments embody our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' " (*Garrison v. Louisiana* (1964) 379 U.S. 64, 74-75 [85 S.Ct. 209, 216, 13 L.Ed.2d 125], quoting *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 270 [84 S.Ct. 710, 720-721, 11 L.Ed.2d 686, 95 A.L.R.2d 1412].) "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 339-340 [94 S.Ct. 2997, 3007, 41 L.Ed.2d 789].)

Thus, speech criticizing the government and governmental officials receives the highest protection. However, this protection does not extend to all speech. "But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues. *New York Times Co. v. Sullivan*, 376 U.S., at 270. They belong to that category of utterances which 'are no essential part of any exposition of

---

[3]Neither defendants nor the Court of Appeal rely on the California Constitution as a separate basis to invalidate section 148.6. Although the California Constitution has independent force, and in some regards provides greater protection of speech than the United States Constitution, we have said that California law regarding defamation is coterminous with that of the United States Constitution. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 745-746 [257 Cal.Rptr. 708, 771 P.2d 406]; see also *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352, 367, fn. 12 [93 Cal.Rptr.2d 1, 993 P.2d 334]; *Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1446 [114 Cal.Rptr.2d 69].) Specifically, the California Constitution has never given greater protection to knowingly false factual statements than the United States Constitution. Accordingly, we do not further discuss the California Constitution.

ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' (*Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 572 [62 S.Ct. 766, 769, 86 L.Ed.2d 1031](1942)." (*Gertz v. Robert Welch, Inc.*, *supra*, 418 U.S. at p. 340 [94 S.Ct. at p. 3007].)

Although false statements of fact, by themselves, have no constitutional value, constitutional protection is not withheld from all such statements. "[W]here the criticism is of public officials and their conduct of public business, the interest in private reputation is overborne by the larger public interest, secured by the Constitution, in the dissemination of truth. . . . [¶] Moreover, even where the utterance is false, the great principles of the Constitution which secure freedom of expression in this area preclude attaching adverse consequences to any except the knowing or reckless falsehood. Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth." (*Garrison v. Louisiana, supra*, 379 U.S. at pp. 72-73 [85 S.Ct. at p. 215], fn. omitted.)

For these reasons, the high court announced in a landmark civil libel case a "rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co. v. Sullivan, supra*, 376 U.S. at pp. 279-280 [84 S.Ct. at p. 726].) The court later applied the same rule to a criminal case. "The reasons which led us so to hold in *New York Times*, 376 U.S., at 279-280, apply with no less force merely because the remedy is criminal. The constitutional guarantees of freedom of expression compel application of the same standard to the criminal remedy. Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned. And since '. . . erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the "breathing space" that they "need . . . to survive" . . . ,' 376 U.S., at 271-272, only those false statements made with the high degree of awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions." (*Garrison v. Louisiana, supra*, 379 U.S. at p. 74 [85 S.Ct. at pp. 215-216].)

The high court has made clear, however, that even as to public officials, knowingly false statements of fact are constitutionally unprotected. "The use of calculated falsehood, however, would put a different cast on the constitutional question. Although honest utterance, even if inaccurate, may further

the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity. . . . For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. . . . Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." (*Garrison v. Louisiana, supra*, 379 U.S. at p. 75 [85 S.Ct. at p. 216].)

■ Section 148.6 governs false allegations of misconduct only if the person knows them to be false. This test is even more stringent than the test of *New York Times Co. v. Sullivan, supra*, 376 U.S. 254, because it does not sanction recklessly false statements but only knowingly false statements. Thus section 148.6 proscribes only constitutionally unprotected speech.

This conclusion, however, does not end the inquiry. The Court of Appeal invalidated section 148.6 not because it proscribed protected speech but because it proscribed only some—not all—of the unprotected speech in its category. For this conclusion it relied on *R.A.V., supra*, 505 U.S. 377, to which we now turn.

C. *The R.A.V. Case*

In *R.A.V., supra*, 505 U.S. 377, the defendant, who had allegedly burned a cross in an African-American family's yard, was charged with violating a St. Paul, Minnesota, ordinance that prohibited the placing " 'on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender . . . .' " (*Id.* at p. 380 [112 S.Ct. at p. 2541].) The Minnesota courts had interpreted the ordinance as proscribing only "fighting words." (*Ibid.*) The high court unanimously agreed the ordinance violated the First Amendment to the United States Constitution, but it divided as to the reasons.

As the Court of Appeal recently summarized, the *R.A.V.* majority invalidated the ordinance "as unlawfully discriminating on the basis of content. According to the high court, its previous statements that the Constitution does not protect certain categories of expression were not to be taken literally, but meant only that 'these areas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)—not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles

for content discrimination unrelated to their distinctively proscribable content.' ([*R.A.V.*, *supra*, 505 U.S. at pp. 383-384 [112 S.Ct. at p. 2543]], original italics.) Thus, while certain categories of speech and expressive conduct may be regulated, such regulation may not discriminate *within that category* on the basis of content. For example, 'the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government.' ([*Id.*, at p. 384 [112 S.Ct. at p. 2543]], original italics.) The ordinance in *R.A.V.* was *facially* unconstitutional as content-based discrimination because it discriminated among fighting words based on race, color, creed, religion, or gender. (*Id.*, at p. [391 [112 S.Ct. at pp. 2547-2548]].)" (*In re Steven S.* (1994) 25 Cal.App.4th 598, 610 [31 Cal.Rptr.2d 644].)

Defendants aptly summarize their argument why section 148.6 is unconstitutional under *R.A.V.*, *supra*, 505 U.S. 377: " . . . California may choose to ban all defamation proscribable under [*New York Times Co. v. Sullivan, supra*, 376 U.S. 254] and [*Garrison v. Louisiana, supra*, 379 U.S. 64, 67 [85 S.Ct. 209, 212]], regardless of its subject matter or target. Alternatively, California may choose to provide an absolute privilege for all citizen complaints, including speech critical of peace officers. What the state may not do, without running afoul of the First and Fourteenth Amendments, is to apply one defamation rule to citizen complaints against peace officers, and a different rule to those made against other public officials. That, however, is precisely the content- and viewpoint-based distinction created by Penal Code section 148.6." ▮ In other words, defendants argue the Legislature may proscribe all knowingly false allegations of misconduct or none, but it may not proscribe some of them. As we explain, defendants misread *R.A.V.*, *supra*, 505 U.S. 377. That decision does not require such an all-or-nothing approach.[4]

In response to criticism by the minority, the *R.A.V.* majority denied that it was requiring the proscription of either all speech or no speech. "In our view, the First Amendment imposes not an 'underinclusiveness' limitation but a 'content discrimination' limitation upon a State's prohibition of proscribable speech." (*R.A.V.*, *supra*, 505 U.S. at p. 387 [112 S.Ct. at p. 2545].)

---

[4]*R.A.V.*, *supra*, 505 U.S. 377, involved fighting words, not knowingly false statements of fact. This circumstance seemed important to the high court. "It is not true that 'fighting words' have at most a '*de minimis*' expressive content, [citation], or that their content is *in all respects* 'worthless and undeserving of constitutional protection,' [citation]; sometimes they are quite expressive indeed." (*Id.* at pp. 384-385 [112 S.Ct. at pp. 2543-2544].) Arguably, knowingly false statements of fact, unlike fighting words, *are* in all respects worthless and undeserving of constitutional protection. However, the court cited defamation as an example of the kind of proscribable speech it was talking about (*id.* at p. 383 [112 S.Ct. at p. 2543]), which suggests it at least assumed that its opinion covers knowingly false statements of fact. Accordingly, we will assume section 148.6 is subject to that decision.

"Even the prohibition against content discrimination that we assert the First Amendment requires is not absolute. It applies differently in the context of proscribable speech than in the area of fully protected speech. The rationale of the general prohibition, after all, is that content discrimination 'raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace,' [citations]. But content discrimination among various instances of a class of proscribable speech often does not pose this threat." (*Id.* at pp. 387-388 [112 S.Ct. at p. 2545].)

The high court identified three categories of content discrimination that do not threaten to drive ideas or viewpoints from the marketplace and hence are permissible. (*R.A.V., supra,* 505 U.S. at pp. 388-390 [112 S.Ct. at p. 2545-2547].) Contrary to defendants' argument and the Court of Appeal's conclusion, we find that all three categories apply here.

First, "When the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable, no significant danger of idea or viewpoint discrimination exists." (*R.A.V., supra,* 505 U.S. at p. 388 [112 S.Ct. at p. 2545].) The Court of Appeal noted that this language "can best be understood by way of a concrete example provided by *R.A.V.*" We agree, but the Court of Appeal overlooked the most pertinent example: "[T]he Federal Government can criminalize only those threats of violence that are directed against the President, see 18 U.S.C. § 871—since the reasons why threats of violence are outside the First Amendment (protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur) have special force when applied to the person of the President. [Citation.] But the Federal Government may not criminalize only those threats against the President that mention his policy on aid to inner cities." (*R.A.V., supra,* at p. 388 [112 S.Ct. at p. 2546].)

This example applies here. The reason the entire class of speech at issue—knowingly false statements of fact—is proscribable has "special force" (*R.A.V., supra,* 505 U.S. at p. 388 [112 S.Ct. at p. 2546]) when applied to false accusations against peace officers. When a person makes a complaint against a peace officer of the type that section 148.6 governs, the agency receiving the complaint is legally *obligated* to investigate it and to retain the complaint and resulting reports or findings for at least five years. (§ 832.5.) Thus, the potential harm of a knowingly false statement is greater here than in other situations. "The State's desire to redress these perceived harms provides an adequate explanation for its" criminalizing these particular *false statements of fact* "over and above mere disagreement with offenders' beliefs or biases." (*Wisconsin v. Mitchell* (1993) 508 U.S. 476, 488 [113

S.Ct. 2194, 2201, 124 L.Ed.2d 436] [rejecting a constitutional challenge under *R.A.V., supra*, 505 U.S. 377, to law punishing bias-motivated crimes more severely than crimes committed for other reasons].) Accordingly, just as the government may criminalize only threats of violence against a specific victim, the President, so too may the Legislature criminalize only knowingly false accusations against a class of victims, peace officers. To complete the analogy, what the Legislature may *not* do is criminalize only knowingly false accusations of illegal racial profiling.

Second, "Another valid basis for according differential treatment to even a content-defined subclass of proscribable speech is that the subclass happens to be associated with particular 'secondary effects' of the speech, so that the regulation is '*justified* without reference to the content of the . . . speech,' [citations]." (*R.A.V., supra*, 505 U.S. at p. 389 [112 S.Ct. at p. 2546].) This basis also applies here. Knowingly false accusations of misconduct against a peace officer have substantial secondary effects—they trigger mandatory investigation and record retention requirements. Complaints directed at other persons do not receive this special treatment. This requirement of an investigation, and the resulting investigation itself, can have substantial effects. Public resources are required to investigate these complaints, resources that could otherwise be used for other matters; the complaints may adversely affect the accused peace officer's career, at least until the investigation is complete; and the complaints may be discoverable in criminal proceedings. (See *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 8-10 [124 Cal.Rptr.2d 202, 52 P.3d 129]; *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241, 249-250 [247 Cal.Rptr. 909].) These secondary effects justify the regulation on a neutral basis without reference to the content of the speech. (See *Morascini v. Commissioner of Public Safety* (1996) 236 Conn. 781 [675 A.2d 1340, 1348-1351] [cost of speech that the state must bear for reasons unrelated to its content is a secondary effect].)

The third category is a catchall. "There may be other . . . bases as well. Indeed, to validate such selectivity (where totally proscribable speech is at issue) it may not even be necessary to identify any particular 'neutral' basis, so long as the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." (*R.A.V., supra*, 505 U.S. at p. 390 [112 S.Ct. at p. 2547].) Here, we see no realistic possibility of official suppression of ideas. In finding to the contrary, the Court of Appeal stated, "The explicit legislative intent of the law is to suppress a specific class of speech: citizen complaints of police misconduct." Were that statement accurate, our task would be easy indeed. Complaining of police misconduct is a quintessential right in this country. But that is not what is afoot here. The Legislature is not suppressing all complaints of police misconduct, only knowingly false ones.

Defendants argue that section 148.6 impermissibly targets a "disfavored subject[]." (Quoting *R.A.V.*, *supra*, 505 U.S. at p. 391 [112 S.Ct. at p. 2547].) On the contrary, the targeted subject—formally filed complaints of misconduct against a peace officer—is, in other respects, *favored*. Those complaints are subject to mandatory investigation and record retention requirements. If a person wants to file a complaint in a way that forces an investigation, that person may not knowingly tell a factual falsehood. The Legislature may elevate the status of a category of complaints that are particularly sensitive— like those of misconduct against peace officers—and require their investigation and retention of records, and at the same time penalize those who invoke that status with knowingly false complaints. No one has a constitutional right to make a complaint of misconduct knowing both that the complaint must be investigated and that it is false.

Defendants suggest that the requirement of section 148.6, subdivision (a)(2), that the complainant read and sign an admonition explaining the right to make a complaint, the investigation and record retention requirements, and the criminal sanction for knowingly false complaints, shows that official suppression of ideas is indeed afoot. We disagree. That admonition merely advises complainants of the law and impresses on them the significance of the formal complaint. Warning people of the consequences of a knowingly false complaint is no more impermissible than advising people they are signing a document or testifying under penalty of perjury. The explanation and admonition do not invalidate the statute.

Some of the arguments that the defendants and the Court of Appeal below employ do not match the purported reason they claim section 148.6 is invalid. In its concluding remarks, the Court of Appeal stated, "In our country, we expect and tolerate an infinite variety of expression." The statement is both true and irrelevant. In our country, we do not expect, and the Constitution does not require us to tolerate, knowingly false statements of fact.

Defendants argue that section 148.6 has a "chilling effect" on the exercise of constitutional rights. The Court of Appeal echoes this argument: "But section 148.6 might well stifle the registering of legitimate complaints made by the remaining 30 to 40 percent of citizens." But they do not explain, and we do not see, how extending section 148.6 to *all* complaints of public employee misconduct would reduce this supposed chilling effect. As defendants necessarily concede, however, so extending section 148.6 would cure any violation of the rule of *R.A.V.*, *supra*, 505 U.S. 377. Thus, the chilling

effect argument has nothing to do with whether section 148.6 is invalid under *R.A.V., supra,* 505 U.S. 377.

Rather, the chilling effect argument relates to another common constitutional objection to legislation regulating speech—that it is overbroad because it threatens protected as well as unprotected speech. ■ A statute is facially overbroad if it "may cause others not before the court to refrain from constitutionally protected speech or expression." (*Broadrick v. Oklahoma* (1973) 413 U.S. 601, 612 [93 S.Ct. 2908, 2916, 37 L.Ed.2d 830]; see *In re M.S.* (1995) 10 Cal.4th 698, 709 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) To succeed, "a constitutional challenge based on asserted overbreadth . . . must demonstrate the statute inhibits a substantial amount of protected speech. (*New York v. Ferber* (1982) 458 U.S. 747, 768-769 [73 L.Ed.2d 1113, 1129-1130, 102 S.Ct. 3348].) '[O]verbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' (*Broadrick* v. *Oklahoma, supra,* 413 U.S. at p. 615 [37 L.Ed.2d at p. 842].)" (*In re M.S., supra,* 10 Cal.4th at p. 710.)

■ Section 148.6 is not overbroad. The high court explained in *New York Times Co. v. Sullivan, supra,* 376 U.S. 254, and *Garrision v. Louisiana, supra,* 379 U.S. 64, that a statute regulating all false statements of fact *would* be overbroad because it *would* inhibit protected speech. But section 148.6 proscribes only *knowingly* false statements. As noted in another case that rejected a chilling effect argument regarding section 148.5, "The statute prohibits only knowing falsehoods. This requirement of scienter protects witnesses who honestly misperceive facts. Those who knowingly give false information to police officers should be discouraged from doing so." (*People v. Lawson* (1979) 100 Cal.App.3d 60, 68 [161 Cal.Rptr. 7].) Moreover, section 148.6 applies only to formally filed accusations that the agency must investigate, not to more casual speech. Such formal accusations are akin to statements or declarations made under penalty of perjury which, if knowingly false, are punishable as a *felony.* (§§ 118, 126.) Accusations that section 148.6 covers are not as formal as statements made under penalty of perjury, but the punishment for such accusations that are knowingly false is also not as serious. Section 148.6 has no more of an impermissible chilling effect than California's perjury laws.[5]

---

[5]If the statute had criminalized other, less formal accusations—in speeches or newspapers, for example—the potential for chilling the exercise of constitutionally protected speech would arguably be greater. We are reviewing only the statute actually before us and express no opinion on the constitutionality of other possible statutes. We also note that this case involves only a *facial* challenge to section 148.6, not an "as applied" challenge. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Nothing we say would preclude an as applied challenge should section 148.6 be improperly applied.

Defendants cite a series of state and federal district court decisions declaring Civil Code section 47.5[6] unconstitutional (*Gritchen v. Collier* (C.D.Cal. 1999) 73 F.Supp.2d 1148, revd. on jurisdictional grounds (9th Cir. 2001) 254 F.3d 807; *Haddad v. Wall* (C.D.Cal. 2000) 107 F.Supp.2d 1230; *Walker v. Kiousis, supra*, 93 Cal.App.4th 1432), and a federal district court order declaring Penal Code section 148.6 unconstitutional (*Hamilton v. City of San Bernardino* (C.D.Cal. 2000) 107 F.Supp.2d 1239). *Hamilton v. City of San Bernardino, supra*, 107 F.Supp.2d 1239, contains almost identical analysis as *Haddad v. Wall, supra*, 107 F.Supp.2d 1230, filed the same day by the same court. All of these cases rely on *R.A.V., supra*, 505 U.S. 377. We find them either inapposite or unpersuasive. The first, *Gritchen v. Collier, supra*, 73 F.Supp.2d 1148, was reversed on appeal when the Ninth Circuit Court of Appeals held that the district court lacked jurisdiction to decide the question. (*Gritchen v. Collier, supra*, 254 F.3d 807.) Although, as defendants note, the Ninth Circuit reversed the decision because the district court should not have decided the constitutional question rather than because it decided it incorrectly, the reversal certainly weakens its precedential value. To the extent the later decisions rely on the reversed decision (see *Haddad v. Wall, supra*, 107 F.Supp.2d at pp. 1233-1234, 1237-1238; *Hamilton v. City of San Bernardino, supra*, 107 F.Supp.2d at pp. 1243-1244, 1246-1247; *Walker v. Kiousis, supra*, 93 Cal.App.4th at p. 1437), they are accordingly also weakened.

But we need not consider in detail the extent to which the reversal of *Gritchen v. Collier, supra*, 73 F.Supp.2d 1148, undermines these cases. We express no opinion on the validity of Civil Code section 47.5 because the issue is not before us. For the reasons stated, we respectfully disagree that Penal Code section 148.6 is invalid. *Hamilton v. City of San Bernardino, supra*, 107 F.Supp.2d 1239, overlooks the circumstance that complaints subject to the criminal sanction of Penal Code section 148.6 have, in some ways, a favored status that justifies the regulation without reference to the content of the speech, and the other reasons we have identified why the statute is valid.

### III. CONCLUSION

The Court of Appeal erred in finding section 148.6 unconstitutional. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., and Brown, J., concurred.

---

[6]Civil Code section 47.5 provides, as relevant, that "a peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made with knowledge that it was false and that it was made with spite, hatred, or ill will."

**WERDEGAR, J.,** Concurring.—I agree with the majority that Penal Code section 148.6 (section 148.6) is constitutional because it criminalizes only knowingly false complaints against peace officers, and any content discrimination it embodies by not covering complaints against other public officials is, in light of the substantial secondary effects of a complaint against a peace officer, justifiable under *R. A. V. v. St. Paul* (1992) 505 U.S. 377 [112 S.Ct. 2538, 120 L.Ed.2d 305] (*R.A.V.*) " 'without reference to the content of the . . . speech' " (*id.* at p. 389 [112 S.Ct. at p. 2546]). (See maj. opn., *ante,* at pp. 508-509 [noting cost to public of mandatory investigation of police misconduct complaints].) Accordingly, I concur in the judgment of reversal and in this aspect of the majority's reasoning. I disagree, however, that section 148.6 *also* falls within *R.A.V.*'s "special force" exception for content discrimination based on "the very reason the entire class of speech at issue is proscribable" (*R.A.V., supra,* at p. 388 [112 S.Ct. at p. 2545]) or its catchall exception, applicable where "there is no realistic possibility that official suppression of ideas is afoot" (*id.* at p. 390 [112 S.Ct. at p. 2547]). (See maj. opn., *ante,* at pp. 508-509.)

As the majority itself points out, the reason that the class of speech at issue—knowingly false statements of fact—is proscribable (as defamation) is that it has " 'no constitutional value' " (maj. opn., *ante,* at p. 504, quoting *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 340 [94 S.Ct. 2997, 3007, 41 L.Ed.2d 789]); that is, such speech may injure personal reputations without making any positive contribution to the democratic process. This reason, the majority asserts, "has 'special force' [citation] when applied to false accusations against peace officers." (Maj. opn., *ante,* at p. 508.) But section 148.6 does not target speech that is *especially* worthless or *especially* injurious to reputation. Put another way, the majority identifies nothing about false speech affecting peace officers that distinguishes it from false speech affecting other governmental officials *with respect to the grounds on which defamation is proscribable in the first place.* Accordingly, *R.A.V.*'s "special force" exception does not apply. (See *R.A.V., supra,* 505 U.S. at p. 388 [112 S.Ct. at p. 2546].)

As to the catchall exception, the majority sees here "no realistic possibility of official suppression of ideas" (maj. opn., *ante,* at p. 509), but I disagree. Section 148.6 "gives protection to peace officers that the Legislature has not given to others" who work in public service. (Maj. opn., *ante,* at p. 503.) Section 148.6 also is unique in its mandate that the possibility of criminal sanctions for knowingly false complaints be prominently held up before prospective complainants at a critical juncture. In many police misconduct situations, it inevitably will come down to the word of the citizen against the word of the police officer or officers, in which case law enforcement

authorities will conduct an investigation to determine who is telling the truth. If authorities for any reason disbelieve the citizen, the citizen (whether guilty or innocent) may then under section 148.6 face both criminal prosecution and the burden and expense of retaining a defense attorney. Prospective complainants cannot help but be aware of these realities when deciding whether to go forward with their complaints by signing the statute's required admonition. Realistically, some complainants are likely to choose *not* to go forward—even when they have legitimate complaints.

In light of the foregoing, and as we need not, in order to find section 148.6 constitutional, rely on *R.A.V.*'s "special force" or catchall exceptions from the First Amendment's general ban on content discrimination, I do not rely on them. Instead, I rest my concurrence on the exception for content discrimination justifiable " 'without reference to the content of the . . . speech.' " (*R.A.V., supra*, 505 U.S. at p. 389 [112 S.Ct. at p. 2546].)

Moreno, J., concurred.