[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 512 
The issue presented in this case is whether Civil Code section 47.5
(undesignated section references are to this code) is unconstitutional under the First Amendment as improper content-based discrimination. We answer this question in the negative and affirm.
 FACTUAL AND PROCEDURAL BACKGROUND
Appellant failed to designate a reporter's transcript of the trial; thus, our factual summary derives from the trial court's statement of decision.
Dona Loshonkohl, a veteran police officer with the City of San Diego Police Department (SDPD), was responsible for establishing good community relations as part of the SDPD's "Community Oriented Policing" program. Part of this program, called the "Problem Oriented Policy" (POP) program, focused on designing solutions to alleviate specific problems within a community.
James M. Kinder operates a car rental business, and several other businesses, from a location on India Street in San Diego. After a confrontation with Kinder on August 14, 1998, Loshonkohl obtained approval for a POP project to deal with problems near Kinder's businesses, including problems *Page 513 
with abandoned vehicles, parking, creating a neighborhood eyesore and code violations. The POP project focused on Kinder's businesses and at least six other businesses in the area. During the course of the POP project, Kinder aggressively confronted Loshonkohl on a number of occasions and by the project's conclusion, officers impounded and towed a total of 41 vehicles, 16 of which belonged to Kinder.
Kinder filed 20 complaints with the SDPD regarding Loshonkohl's actions, which he stated were for the purpose of "revenge." The SDPD individually reviewed, evaluated and investigated 18 complaints; two were treated as "inquiries" because Kinder refused to respond to questions about the complaints. Except where Kinder refused to cooperate, the complaints were determined to be "unfounded," "not sustained" or Loshonkohl was "exonerated."
In September 1998, Loshonkohl filed a complaint against Kinder containing five separate causes of action for defamation under section47.5 The trial court found section 47.5 constitutional on its face, and as applied, after considering the legislative history of section 47.5, the testimony of two SDPD sergeants and a number of exhibits containing statistical information regarding the number of unmeritorious citizen's complaints.
The trial court concluded that Kinder's "relentless challenge[s]" damaged Loshonkohl's reputation within the SDPD and caused her "grave and serious emotional injury," including loss of self-confidence and depression. Based on a consideration of Loshonkohl's past performance, longevity in the police force, education and skills, the trial court concluded that, as a result of the fallacious complaints and the resulting emotional toll, Loshonkohl was denied career opportunities, including positions as a field training officer, a detective, and a police department recruiter. Based on these findings, the court entered judgment in Loshonkohl's favor in the amount of $350,000.
Kinder filed a notice of appeal from the judgment. About four months later, he filed a motion to set aside the judgment based on a recent appellate court decision declaring section 47.5 unconstitutional on its face as violative of the right to free speech. (Walker v. Kiousis
(2001) 93 Cal.App.4th 1432 (Walker). The trial court denied the motion, concluding it lacked jurisdiction to set aside the judgment. Assuming, arguendo, that it had jurisdiction to change the judgment, the trial court found that the facts in Walker were distinguishable and concluded that the Walker court had incorrectly addressed the constitutional issue. *Page 514 
 DISCUSSION
Section 47, subdivision (b) (section 47(b)), creates an absolute privilege from liability for a publication made in any legislative or judicial proceeding or "any other official proceeding authorized by law." Traditionally, section 47(b) protected citizens who complained about police misconduct from liability for their statements. However, section 47.5, which was enacted in 1982, creates an exception to the absolute privilege under section 47(b). (Walker, supra, 93 Cal.App.4th at p. 1440, citing Imig v. Ferrar (1977)70 Cal.App.3d 48, 54-57.) It allows peace officers to bring defamation claims against those who file complaints against them for "misconduct, criminal conduct, or incompetence" with their employers if the complaint is knowingly false and made with "spite, hatred, or ill will." (§47.5)
While the First Amendment to the United States Constitution protects freedom of speech, the United States Supreme Court has recognized several categories of speech that can be regulated "because of their constitutionally proscribable content," including obscenity, fighting words and defamation. (R.A.V. v. City of St. Paul, Minnesota (1992)505 U.S. 377, 383 (R.A.V.), italics omitted.) Although these categories of speech may be regulated, the government may not regulate within these categories based on content, in other words, based on disapproval of the ideas expressed. (People v. Stanistreet (2001) 29 Cal.4th 497, 507
(Stanistreet).) As an often cited example of this principle, the government may ban libel because it is an unprotected category, but it may not discriminate based on content by banning only libel that criticizes the government. (R.A.V., supra, 505 U.S. at p. 384.)
The rationale governing the proscription against content discrimination is to prevent the government from "driv[ing] certain ideas or viewpoints from the marketplace." (R.A.V., supra, 505 U.S. at p. 387, citations omitted.) Based on this rationale, the United States Supreme Court has identified three situations in which content discrimination does not threaten the expression of ideas (and is therefore constitutional): (1) situations where the basis for the discrimination "consists entirely of the very reason the entire class of speech at issue is proscribable" (id. at p. 388); (2) situations where the discrimination is based on the "secondary effects" of the speech and is "justified without reference to the content of the . . . speech" (id. at p. 389, italics omitted); or (3) in other situations, "so long as the nature of the content *Page 515 
discrimination is such that there is no realistic possibility that official suppression of ideas is afoot" (id. at p. 390).
The Walker court concluded that section 47.5 was content-based discrimination because it restricted "defamatory speech against one group of public officials, peace officers, while leaving intact the privilege under section 47 for defamatory speech against all other public officials." (Walker, supra, 93 Cal.App.4th at p. 1448.) The court also noted that the statute discriminated based on viewpoint because it made actionable only defamatory complaints against peace officers, while leaving privileged defamatory statements made by a peace officer during a formal complaint proceeding. (Id. at p. 1449.) The Walker court declared section 47.5 unconstitutional on its face, concluding that none of the exceptions articulated in R.A.V. applied. (Walker, supra,93 Cal.App.4th at pp. 1450-1454, 1457.)
After Division Two of this District issued the Walker opinion, and during the pendency of this appeal, the California Supreme Court issued its decision in Stanistreet. In Stanistreet, the court addressed the constitutionality of Penal Code section 148.6, which makes it is a misdemeanor to file a knowingly false allegation of misconduct against a peace officer. (Stanistreet, supra, 29 Cal.4th at p. 501.) The Legislature enacted Penal Code section 148.6 in 1995 to fill a gap created after courts interpreted Penal Code section 148.5 as not applying to complaints by the public against peace officers. (Stanistreet, supra,29 Cal.4th at pp. 502-503; Pen. Code, § 148.5 [reporting commission of a crime to a peace officer knowing the report to be false is a misdemeanor].) The Stanistreet court expressly recognized that, in criminalizing knowingly false statements about peace officer misconduct (rather than the commission of a crime), Penal Code section 148.6
gives "protection" to peace officers that the Legislature has not given to others. (Stanistreet, supra, 29 Cal.4th at pp. 502-503.)
After stating that Penal Code section 148.6 proscribes only constitutionally unprotected speech (knowingly false statements), theStanistreet court acknowledged the statute could still be unconstitutional if it discriminates based on content. (Stanistreet,supra, 29 Cal.4th at pp. 506-508.) "[C]ontent discrimination `raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace'. . . ." (R.A.V., supra,505 U.S. at p. 387, citing Simon Schuster, Inc. v. Members of the New York StateCrime Victims Bd. (1991) 502 U.S. 105, 116.) The court then applied the three categories of permissible content discrimination identified by theR.A.V. court to determine whether Penal Code section 148.6
threatened to drive *Page 516 
certain ideas or viewpoints from the marketplace. (Stanistreet,supra, 29 Cal.4th at pp. 508-511, three categories listedante.) Although the Stanistreet court concluded that Penal Code section148.6 falls within all three categories (Stanistreet, supra, 29 Cal.4th. at p. 508), we begin our discussion with the third R.A.V.
exception, which applies where "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." (R.A.V., supra, 505 U.S. at p. 390.)
The Stanistreet court rejected the argument that formally filed complaints of peace officer misconduct are disfavored subjects, stating such complaints are actually favored. (Stanistreet, supra,29 Cal.4th at p. 510.) It also rejected the argument that Penal Code section 148.6
had a "chilling effect" on the exercise of the constitutional right to free speech, concluding that Penal Code section 148.6 created no realistic possibility of the official suppression of ideas because "[t]he Legislature is not suppressing all complaints of police misconduct, only knowingly false ones." (Stanistreet, supra, 29 Cal.4th at pp. 509-510.) The court noted that extending Penal Code section 148.6 to all complaints of public employee misconduct would not reduce this perceived chilling effect and that the statute survived any constitutional challenge based on overbreadth because the scienter requirement protected those that honestly misperceived facts. (Stanistreet, supra,29 Cal.4th at pp. 510-511.)
The question presented is whether the reasoning of Stanistreet applies to validate section 47.5 Because Stanistreet was decided after briefing in this case, we invited the parties to submit supplemental letter briefs discussing application of the Stanistreet reasoning to the present appeal. They have done so, and we have received and considered those submissions.
While the Stanistreet court expressly declined to render an opinion on the validity of section 47.5, we conclude, as discussed below, that the Stanistreet reasoning as to the third R.A.V. exception applies equally to section 47.5 and we affirm on this ground. We therefore only briefly address the first and second R.A.V. exceptions and note that these exceptions arguably do not apply to section 47.5 TheStanistreet court validated Penal Code section 148.6 under the first and second R.A.V. exceptions, concluding that the "potential harm" of knowingly making false complaints against a peace officers is greater than the potential harm of similar complaints against other public officials because the agencies accepting these complaints have a legal obligation to expend public resources to investigate, retain and report the findings. (Stanistreet, supra, 29 Cal.4th at pp. 508-509.) The expenditure of *Page 517 
public resources also constituted a "secondary effect" that justified Penal Code section 148.6 without regard to content. (Stanistreet, supra, 29 Cal.4th at p. 509.) This rationale is inapposite to section 47.5, a statute designed to redress personal harm suffered by individual peace officers. Similarly, the "emotive impact of [defamatory] speech on its audience is not a `secondary effect.'" (Boosv. Barry (1988) 485 U.S. 312, 321.)
As to the third R.A.V. exception, Kinder and amici counsel advance arguments similar to those rejected in Stanistreet, contending that section 47.5 impermissibly applies to only a group of victims and a realistic possibility exists that section 47.5 will suppress truthful citizen complaints. However, these arguments fail for the reasons articulated by the Stanistreet court. As an intermediate appellate court we are bound by decisions of our Supreme Court and we must follow the reasoning found therein. (Auto Equity Sales, Inc. v. SuperiorCourt (1962) 57 Cal.2d 450, 455.)
Section 47.5 makes actionable only formal complaints against peace officers based on knowingly false statements of fact, speech that is constitutionally unprotected. (Stanistreet, supra, 29 Cal.4th at p. 501;Garrison v. Louisiana (1964) 379 U.S. 64, 72-73.) The scienter requirement "`protects witnesses who honestly misperceive facts. Those who knowingly give false information to police officers should be discouraged from doing so.' [Citation.]" (Stanistreet, supra,29 Cal.4th at p. 511.) Further, section 47.5 provides an additional safeguard not included in Penal Code section 148.6, that the speech must be made with "spite, hatred, or ill will." (§ 47.5) This extra requirement exceeds the standards enunciated by the United States Supreme Court for the recovery of defamation damages by public officials. (NewYork Times Co. v. Sullivan (1964) 376 U.S. 254, 279-280 [public official may recover for defamatory falsehood relating to official duties if statement is made with "`actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."].) Thus, the potential for defamation liability under section47.5 creates no realistic possibility of the official suppression of ideas because "[t]he Legislature is not suppressing all complaints of police misconduct, only knowingly false ones." (Stanistreet, supra,29 Cal.4th at p. 509.)
While Kinder correctly points out that section 47.5 gives peace officers a right to sue for defamation damages that is not afforded to other public *Page 518 
officials, this does not render the statute constitutionally infirm. As noted by the high court in R.A.V., the underinclusiveness of a regulation restricting "totally proscribable speech" need not be justified by reference to a neutral basis "so long as the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." (R.A.V., supra,505 U.S. at p. 390.) As discussed above, there is no realistic possibility that section 47.5 results in the official suppression of ideas.
While citizen complainants have not received the reciprocal right to sue peace officers for defamation committed against them during the investigation of their complaints, this lack of reciprocity is not startling, nor does it render the statute unconstitutional. Citizen complainants are not similarly situated and there is no indication peace officer defamation of citizen complainants poses a problem. "TheFirst Amendment does not require States to regulate for problems that do not exist." (Burson v. Freeman (1992) 504 U.S. 191, 207.) It was entirely reasonable for the Legislature to make a policy judgment that only formal complaints against peace officers should be exempted from the absolute litigation privilege of section 47(b).
Moreover, it is important to realize that section 47.5 does not prohibit expression of ideas, political concepts or criticisms of peace officers, specifically or in general. Section 47.5 only exempts a limited class of complainants — those individuals who, with spite, hatred or ill will, make knowingly false complaints against peace officers with the officer's employing agency — from the protections of the absolute litigation privilege (§ 47(b)). While it is true that a peace officer could falsely accuse the citizen complainant of a crime during investigation of the complaint and the complainant would have no right to sue for defamation (Walker, supra,93 Cal.App.4th at p. 1449), section 47.5 does not absolve peace officers from liability for defamation that otherwise does not fall under the section 47(b) privilege. (See Silberg v. Anderson (1990) 50 Cal.3d 205, 212 ["privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."].) Under the reasoning ofStanistreet, section 47.5 is constitutional because it falls within the third category of permissible content discrimination identified inR.A.V.
Because we conclude section 47.5 is constitutional, we do not reach Loshonkohl's alternative argument that we can affirm the judgment under *Page 519 
common law defamation without reliance on section 47.5 because Kinder abused the section 47 privilege, except to note that Loshonkohl did not assert a common law defamation theory in her complaint. Finally, we do not address Kinder's argument, raised for the first time in his reply brief, that the judgment must be reversed because the damage award was excessive as a matter of law since he did not preserve this issue by seeking a new trial based thereon. (Schroeder v.Auto Driveaway Co. (1974) 11 Cal.3d 908, 918-919.)
 DISPOSITION
The judgment is affirmed. Loshonkhol is to recover costs.
We Concur:
BENKE, Acting P. J.
McDONALD, J. *Page 520